IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| W.L. GORE & ASSOCIATES, INC., | : | HON. JEROME B. SIMANDLE |
| Plaintiff, | : | Civil No. 11-539 (JBS-KMW) |
| v. | : | |
| AGA MEDICAL CORP., et al., | : | **OPINION** |
| Defendants. | : | |

APPEARANCES:

Steven J. Balick, Esq.
Tiffany Geyer Lydon, Esq.
Lauren E. Maguire, Esq.
Andrew C. Mayo, Esq.
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
     - and -
Matthew K. Blackburn, Esq.
John F. Sweeney, Esq.
LOCKE LORD LLP
44 Montgomery Street, Suite 2400
San Francisco, CA 94104
     Counsel for Plaintiff

Megan C. Haney, Esq.
John C. Phillips, Jr., Esq.
PHILLIPS, GOLDMAN & SPENCE, P.A.
1200 North Broom Street
Wilmington, DE 19806
     - and -
Alan G. Carlson, Esq.
Dennis C. Bremer, Esq.
R.J. Zayed, Esq.
CARLSON, CASPERS, VANDENBURGH & LINDQUIST, P.A.
225 South Sixth Street, Suite 3200
Minneapolis, MN 55402
     Counsel for Defendants

**SIMANDLE**, District Judge[1]:

## I.   INTRODUCTION

This matter is before the Court on the motion of Defendants AGA Medical Corp. and AGA Medical Holdings Inc. to dismiss Plaintiff W.L. Gore & Associates Inc.'s declaratory judgment Complaint for lack of subject matter jurisdiction and lack of personal jurisdiction and, in the alternative, to transfer the action to the United States District Court for the District of Minnesota.  [Docket Item 5.]  In its Complaint, Plaintiff W.L. Gore ("Plaintiff" or "Gore") seeks a declaration that a medical device, identified in the Complaint as the Gore Septal Occluder ("GSO"), does not infringe any valid and enforceable claim of either of two patents owned by Defendant AGA Medical Corp., identified as U.S. Patent No. 5,725,552 ("the '552 patent") and U.S. Patent No. 5,944,738 ("the '738 patent").

Defendants move to dismiss the Complaint for two reasons. First, Defendants argue that the Court lacks subject matter jurisdiction to hear this declaratory judgment action because, at the time the Complaint was filed, no "actual controversy" existed between the parties with regard to the GSO.  Second, Defendants argue that the Court lacks personal jurisdiction over Defendant AGA Medical Corp.  In the alternative, Defendants argue that the

---

[1] Chief U.S. District Judge for the District of New Jersey, sitting by designation pursuant to 28 U.S.C. § 292(b).

Court should transfer the action to the United States District

Court for the District of Minnesota pursuant to 28 U.S.C. §

1404(a), because a patent infringement lawsuit is currently

pending between the parties in that District involving one of the

two contested patents at issue in this action.[2]

The principal issues in this motion are (1) whether a

patentee's Minnesota discovery request for information about a

product, in the context of an ongoing and potentially related

patent infringement lawsuit, constitutes an "actual controversy"

sufficient to constitute an Article III case or controversy and

fall within the bounds of jurisdiction granted under the

Declaratory Judgment Act of 28 U.S.C. § 2201(a); and (2) whether

the convenience of the parties and witnesses and the interest of

justice favor transfer of the action to the District of

Minnesota.  The Court concludes, for the reasons explained below,

that Gore has established subject matter jurisdiction as to one

of the identified patents involved in this matter, but that Gore

has failed to demonstrate that personal jurisdiction exists over

AGA in Delaware; consequently, the Court will transfer the action

---

[2]   After Defendant filed its motion, but before Plaintiff
filed opposition, Plaintiff voluntarily dismissed all claims as
to Defendant AGA Medical Holdings, Inc.  [Docket Item 24.]
Consequently, the Court will deny as moot the motion as to
Defendant AGA Medical Holdings, and will hereafter refer only to
the remaining Defendant, AGA Medical Corp. in discussion of the
instant motion.

to the United States District Court for the District of
Minnesota.

## II.   BACKGROUND

The relevant facts are largely undisputed and are drawn from
the Complaint and, where relevant to the Court's determination of
whether it has personal or subject matter jurisdiction, from the
declarations appended to the parties' briefs.

### A.   The Minnesota Action

The parties to this action both manufacture medical devices
called "occluders" that treat heart defects involving holes in
the chambers of the heart, known as "septal defects."  Compl. ¶¶
11-14.  In particular, AGA manufactures a line of devices called
"Amplatzer occluders," Compl. ¶ 19, while Gore manufactures two
relevant occluder devices: the Gore HELEX Septal Occluder ("the
HELEX Occluder"), and the Gore Septal Occluder ("the GSO") that
is the subject of the instant action.

On August 24, 2010, Defendant AGA Medical Corp. filed a
patent infringement suit against W.L. Gore in the United States
District Court for the District of Minnesota.  See AGA Medical
Corp. v. W.L. Gore & Assoc., Inc., Civ. No. 10-3734 (JNE-JSM) (D.
Minn.) ("the Minnesota Action").  The Minnesota complaint alleges
that Gore manufactures "occluder products, including, without
limitation the Gore HELEX Septal Occluder" and that such products

4

infringe upon several claims in one AGA patent: the '738 patent.
Minnesota Action Compl. ¶ 8, attached at Compl. Ex. 3.   Thus, the
only patent AGA alleges that Gore has violated in the Minnesota
Action is the '738 patent, and the only identified product in the
Minnesota Action is the HELEX Occluder, though the complaint
alleges infringement of Gore's "occluders" generally, and
suggests that other Gore occluders besides the HELEX Occluder
could be involved.

  **B.   The New GSO Device**

     On April 1, 2011, at a cardiology conference in Milan,
Italy, a doctor gave a presentation that described a "5-wire
septal occluder" that he said was then being developed by Gore.
Compl. ¶ 27.   Gore alleges that this "5-wire occluder" is the
GSO.   Id.   AGA apparently became aware of the GSO as a result of
this presentation and, on April 7, 2011, asked Gore to provide
specific information about the GSO within the context of
litigation discovery for the Minnesota Action.   Id. ¶ 32.[3]

     On April 11, 2011, AGA formally served discovery requests
seeking information about the GSO in the Minnesota Action.   Id. ¶
33.   Throughout the following month, AGA repeated its requests
for discovery about the GSO in various formats, and threatened on

---

     [3] Gore presents evidence that an employee of Gore had given
a presentation about the GSO at a medical conference in 2009.
Gafford Decl. Ex. C.   However, there is no evidence in the record
to indicate that AGA became aware of the GSO prior to the April
2011 Milan conference.

May 23, 2011, to seek an order to compel discovery of such information if it was not produced voluntarily.  Id. ¶¶ 34-38. When Gore refused to provide the requested discovery, AGA requested that Gore stipulate to a waiver of any possible laches defense against a future patent infringement action brought by AGA against the GSO.  Id. ¶ 39.

**C.    The Filing of the Delaware Complaint and Minnesota Discovery Dispute**

On June 10, 2011, the GSO received its "CE" mark, permitting Gore to sell the device commercially in Europe.  Id. ¶ 28.  The device was thereafter sold to and implanted in two patients on June 15 and 16, 2011 in Copenhagen, Denmark.  Id. ¶ 29-30.  Gore filed the instant declaratory judgment Complaint on June 16, 2011.  [Docket Item 1.]  As stated above, Gore's Complaint seeks a declaratory judgment that the GSO does not infringe valid or enforceable claims of either the '738 Patent -- which is at issue in the Minnesota Action -- in Counts III and IV and seeks the same declarations as to the '552 Patent -- which is not at issue in the Minnesota Action -- in Counts I and II of the Complaint. AGA has, apparently, never asserted the '552 Patent in a patent infringement action against any party.  Bremer Decl. ¶ 31.

On July 1, 2011, AGA filed its motion to compel discovery concerning the GSO in the Minnesota Action.  Gafford Decl. Ex. L. The motion was argued before United States Magistrate Judge Janie S. Mayeron on July 19, 2011, who granted AGA's motion to compel

6

as to the GSO in the Minnesota Action.   Bremer Second Decl. Ex. 20 at 36:5-13.

### D.   The Parties' Connections to the Forum

AGA Medical Corp. is incorporated in Minnesota and has its principal place of business there.   Compl. ¶ 3.   W.L. Gore is incorporated and has its principal place of business in Delaware. Compl. ¶ 2; Bremer Decl. Ex. 2.   Defendant argues without contradiction, however, that all of AGA's contacts with Gore have taken place in either Minnesota or in Flagstaff, Arizona, which Gore describes as "the hub of Gore's medical products division." Bremer Decl. Ex. 2.   Neither party alleges or points to evidence that AGA has ever contacted Gore in Delaware.

AGA Medical owns no property in Delaware, employs no staff in Delaware, maintains no bank accounts in Delaware, and does not sell any products directly in Delaware.   Rother Decl. ¶ 5.   AGA's web site, however, lists three hospitals in Delaware where physicians will implant AGA's products.   Gafford Decl. Exs. E & F.

AGA sells its products in Delaware, and in other states throughout the nation, through its wholly owned subsidiary Amplatzer Medical Sales Corporation ("AMS").   Barr Decl. ¶ 6. AMS, while not a defendant in this action, is the exclusive distributor of AGA products in the United States.   Id.   For the

eighteen months prior to the date Plaintiff Gore filed its
Complaint, AMS sold only a small number of units in Delaware,
which amounted to an insignificant percentage of AGA's total
products sold in that time period.  Bremer Second Decl. ¶¶ 10-13,
Ex. 22.

Finally, Plaintiff has produced evidence that approximately
fourteen years ago, a doctor located in Delaware conducted a
clinical trial on an AGA product.  Gafford Decl. Ex. M.
Additionally, AGA's products are currently involved in two FDA
device trials based out of a hospital in Delaware.  Gafford Decl.
Ex. N.  However, AGA produces evidence that these medical trials
are controlled by a separate corporate entity from Defendant AGA
Medical Corp., and the contacts of that separate entity are not
attributable to Defendant.  Rother Decl. at ¶¶ 3-4.

Defendant has identified three third-party witnesses who are
residents of Minnesota, who cannot be compelled to attend trial
in Delaware, including the inventors of the relevant patents at
issue in this action.  Reply Brief at 9.

### E.  Procedural History

Defendant AGA initially filed the instant motion to dismiss
or transfer.  [Docket Item 5.]  Plaintiff, rather than filing
opposition to Defendant's motion, filed a motion for
jurisdictional discovery, arguing that such discovery was
necessary to oppose Defendant's personal jurisdiction arguments.

[Docket Item 12.]  The Court subsequently granted in part Plaintiff's motion for jurisdictional discovery and ordered that Defendant provide limited discovery regarding personal jurisdiction.  [Docket Items 18 & 19.]  Jurisdictional discovery was finished on February 9, 2012, and briefing on the instant motion to dismiss or transfer was shortly thereafter completed.

## III.  ANALYSIS AND DISCUSSION

### A.  Subject Matter Jurisdiction

#### 1.  Standard of Review

Defendant AGA moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. Specifically, AGA argues that the Court lacks jurisdiction to issue a declaratory judgment regarding the alleged invalidity and unenforceablility of AGA's identified patents as to the GSO device.  When a party issues a factual challenge to the Court's jurisdiction, the Court "can look beyond the pleadings to decide factual matters relating to jurisdiction." Cestonaro v. United States, 211 F.3d 749, 752 (3d Cir. 2000).  The plaintiff seeking the declaratory judgment bears the burden of establishing the existence of an actual case or controversy that would support jurisdiction.  See Gould Electronics Inc. v. United States, 220 F.3d 169 (3d Cir. 2000).

As the action pertains exclusively to questions of federal patent law, the Court will look to Federal Circuit precedent as controlling rather than Third Circuit precedent because "[o]n matters relating to [the Federal Circuit's] jurisdiction, we apply Federal Circuit law, not that of the regional circuit from which the case arose." Nystrom v. TREX Co., 339 F.3d 1347, 1350-51 (Fed. Cir. 2003).  The relevant time period for assessing whether subject matter jurisdiction exists is at the time the complaint is filed; subsequent events cannot create subject matter jurisdiction if it did not exist at that time.  Innovative Therapies, Inc. v. Kinetic Concepts, Inc., 599 F.3d 1377, 1383-84 (Fed. Cir. 2010).

      2.  Declaratory Judgment Act Jurisdiction

The relevant portion of the Declaratory Judgment Act states

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a).  This "actual controversy" requirement of the statute grows out of Article III of the Constitution, which limits the jurisdiction of the Federal Courts to cases and controversies.  U.S. Const. art. III, § 2.

The Supreme Court has recently considered the question of whether an actual controversy exists in the context of a patent

declaratory judgment suit and reiterated its longstanding rule
that

> the question in each case is whether the facts
> alleged, under all the circumstances, show
> that there is a substantial controversy,
> between the parties having adverse legal
> interests, of sufficient immediacy and reality
> to warrant the issuance of a declaratory
> judgment.

MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007)

(quoting Maryland Casualty Co. v. Pacific Coal & Oil Co., 312

U.S. 270, 273 (1941)).  The Court acknowledged that this inquiry

will necessarily be fact specific and must be made in

consideration of all the relevant circumstances.  Id.  The Court

explained that, consequently, the cases in this area "do not draw

the brightest of lines between those declaratory-judgment actions

that satisfy the case-or-controversy requirement and those that

do not."  Id.

    The MedImmune Court invalidated the Federal Circuit's

previous standard, which was, in relevant part, whether "conduct

by the patentee creates a reasonable apprehension on the part of

the declaratory judgment plaintiff that it will face an

infringement suit."  SanDisk Corp. v. STMicroelectronics, Inc.,

480 F.3d 1372, 1379 (Fed. Cir. 2007).  MedImmune stated that this

"reasonable apprehension" standard was too restrictive,

specifically holding that subject matter jurisdiction exists when

a pharmaceutical manufacturer seeks a declaratory judgment of

invalidity of a patentee's claim despite the fact that the pharmaceutical company continued paying royalties under a license to the patentee to prevent the initiation of a patent infringement suit.  <u>MedImmune</u> at 137.

The Court held that, even though the defendant/patentee in that circumstance could not sue for patent infringement because the declaratory judgment plaintiff continued to pay license royalties under a licensing contract, and therefore the declaratory judgment plaintiff had no reasonable apprehension of suit, an actual controversy still existed consistent with subject matter jurisdiction because the parties were actively contesting the validity of a patent over a product, creating a substantial controversy that was real and immediate.  <u>Id.</u>

The Federal Circuit subsequently interpreted the <u>MedImmune</u> standard in the case of <u>SanDisk Corp. v. STMicroelectronics, Inc.</u>, 480 F.3d 1372, 1379 (Fed. Cir. 2007).  There, the Federal Circuit held that

> where a patentee asserts rights under a patent
> based on certain identified ongoing or planned
> activity of another party, and where that
> party contends that it has the right to engage
> in the accused activity without license, an
> Article III case or controversy will arise and
> the party need not risk a suit for
> infringement by engaging in the identified
> activity before seeking a declaration of its
> legal rights.

Id. at 1381.  The Federal Circuit further drew helpful guidelines around when declaratory judgment jurisdiction will generally exist and where it generally will not exist.

> [D]eclaratory judgment jurisdiction generally will not arise merely on the basis that a party learns of the existence of a patent owned by another or even perceives such a patent to pose the risk of infringement, without some affirmative act by the patentee. But Article III jurisdiction may be met where the patentee takes a position that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do.

Id. at 1380-81.  In SanDisk, the Federal Circuit held that declaratory judgment jurisdiction existed when a patentee presented the declaratory judgment plaintiff with analysis of the plaintiff's product and the patentee's argument for what patent claims such products allegedly infringed, even though the patentee explicitly stated that its intention was not to sue. Id. at 1381.

In Innovative Therapies, Inc. v. Kinetic Concepts, Inc., 599 F.3d 1377 (Fed. Cir. 2010), by contrast, the Federal Circuit held that a sufficient controversy had not been shown in a case where the declaratory judgment plaintiff unilaterally telephoned employees of patentee and received informal speculation from the patentee's employees that a product of the plaintiffs, that the patentee had never seen, would probably be deemed to infringe on

13

patentee's patents and would probably result in an infringement suit.  Id. at 1379-82.

Finally both parties discuss the Eastern District of Texas case of Astec America, Inc. v. Power-One, Inc., Civ. No. 6:07-464, 2008 WL 1734833 (E.D. Tex., Apr. 11, 2008).  In that action, as here, the declaratory judgment action arose in the context of an ongoing patent litigation suit between the parties, in which the patentee had accused the declaratory-judgment plaintiff's other products of infringement.  Id. at *1-2.  The patentee learned of the existence of another of the manufacturer's products that the patentee believed might also infringe, and sought discovery of that product in the patent infringement suit. Id. at *5-6.  The manufacturer then filed a declaratory judgment action, which the patentee subsequently sought to dismiss for lack of an actual controversy because, at the time the declaratory judgment complaint was filed, the patentee had not yet inspected the new product.  Id. at *5.  The Court rejected the patentee's argument, holding that a patentee's action of seeking discovery about a product in the context of an ongoing patent infringement suit sufficed to generate a substantial controversy of sufficient immediacy between the parties to give the court subject matter jurisdiction.  Id. at *6.

> [E]ven without a direct accusation of infringement, Power-One's statements foster the notion that the Atlas Product could infringe Power-One's patents if more

14

> information were made available.
> Specifically, the statements show that Power-
> One believed the Atlas device was a
> continuation of the [accused product], and
> that both of these devices could potentially
> infringe Power-One's patents . . . . Although
> Power-One may not have been certain whether
> the Atlas device infringed its patents at the
> time, it purposefully sought discovery in an
> attempt to show that the Atlas device could be
> accused of infringement.

Id. at *6.

### 3. Application

In the instant matter, Defendant argues that, as to Plaintiff's claims about the '552 Patent, no controversy exists because AGA has not asserted the '552 Patent against Gore in any action, nor threatened such action on the basis of the '552 Patent.  The Court agrees with Defendant that, as to the '552 Patent, Plaintiff has not demonstrated the existence of a controversy between the parties involving the patent or the scope of its claims.  The record lacks any indication that AGA has ever intimated that claims of the '552 Patent could cover the GSO.  Gore's only argument regarding the existence of a substantial controversy regarding the '552 Patent is that "it relates to similar technology as the '738 patent" and that because AGA marks its own products with both patents, "Gore believes that AGA Medical would likely include both patents in future infringement litigation."  Opposition Brief at 10.  The Court concludes that this is insufficient to create subject matter jurisdiction over

the '552 Patent because "The [mere] existence of a patent is not sufficient to establish declaratory judgment jurisdiction." Prasco, LLC v. Medicis Pharm. Corp., 537 F.3d 1329, 1338 (Fed. Cir. 2008), and Plaintiff's subjective belief, absent any action taken by Defendant, is insufficient to generate a substantial controversy.  Innovative Therapies, 599 F.3d, 1382.  The Court will, consequently, grant Defendant's motion to dismiss for lack of subject matter jurisdiction as to Counts I and II of the Complaint.

As to the '738 Patent, by contrast, the Court concludes that a substantial controversy existed at the time the action was commenced.  AGA argues that, like Innovative Therapies, no controversy yet existed in this case at the time it was commenced.  Defendant attempts to distinguish the Astec court's reasoning from the present matter because in the Astec matter, the declaratory-judgment defendant stated that it "believed" that the new products infringed the patents.  The Court concludes that this is not a distinguishing fact.  Defendant AGA served its discovery request on Gore seeking information about the GSO on April 11, 2011.  AGA later argued (successfully) before the Minnesota court that such discovery was justified because AGA might amend its claim to include a claim against the GSO if discovery proved such a claim to be warranted.

>        The Court:  the issue is whether it [discovery
>        regarding the GSO] should be part of this suit

16

and discovery in this suit or whether it should be saved for another day. . . To me, the issue is whether, given you have not expressly included it in the preliminary claim chart or in the Complaint at this point, whether you're entitled to discovery at this point on an unnamed, alleged infringing device.

Mr. Bremer:  Well, the Complaint identifies their septal occluders including, without limitation, the HELEX . . . . we are entitled to discovery with respect to products that looked reasonably similar . . . the product sure looks similar.  I can't say absolutely that product infringes - and I'll just point to these pictures - because I don't know that that's true. But they sure look alike.  We've asked them for information about it, they haven't given it to us.

Bremmer Second Decl. Ex. 20 at 9:19-12:1.[4]

The Court concludes that the distinction whether Defendant "believed" that the GSO infringed or merely suspected that it might is academic when the Defendant had sought discovery of the product in an infringement suit with the intention to amend its

---

[4] The Court notes that this argument took place before Magistrate Judge Mayeron, in the Minnesota Action, on July 19, 2011, approximately one month after the Complaint in this action was filed.  The Court recognizes that events subsequent to the filing of the Complaint cannot create subject matter jurisdiction.  Innovative Therapies, Inc. v. Kinetic Concepts, Inc., 599 F.3d 1377, 1383-84 (Fed. Cir. 2010).  The Court considers this transcript to be relevant, however, because the discovery dispute was already in existence at the time the Complaint was filed, AGA having filed its discovery request in April of 2011, and the argument over the dispute provides justification for Defendant AGA's acts taken prior to the filing of the Complaint.  The Court presumes Defendant agrees with this conclusion as Defendant itself cites to argument from this transcript in support of its motion to dismiss.  See Def.'s Reply at 1.

claim chart to add an infringement claim if its suspicions were borne out by further inspection.  The Court is persuaded by the reasoning in <u>Astec</u> that a substantial controversy that was immediate and real existed at the time Plaintiff filed its declaratory judgment Complaint because prior to that time Defendant had demanded, in the context of a patent infringement suit, that Plaintiff turn over details about the product because Defendant sought the right to add a claim of infringement regarding that product.  That Defendant had not yet fully inspected the product at the time the Complaint was filed does not destroy subject matter jurisdiction in this case because Defendant was actively asserting its rights to do so, which Plaintiff was resisting.  <u>See</u> <u>Astec</u> at *6 ("Furthermore, Artesyn disputed whether such discovery was appropriate.  Such a discovery dispute represents a significant controversy in itself, and required a determination of the Atlas product's likelihood of infringement.").

The Court distinguishes this case from <u>Innovative Therapies</u> because, in that case, the defendant/patentee did not yet officially know of the <u>existence</u> of the relevant product, the plaintiff having merely sought opinions of particular employees with whom plaintiff's agent had a personal relationship. <u>Innovative Therapies</u>, 599 F.3d at 1380-81.  Further, the Federal Circuit found it significant that there was no history of patent

18

enforcement activities between the parties at the time the action commenced. Id. at 1382. By contrast, in the instant matter, AGA took official action regarding the GSO, and the parties have an immediate history of patent infringement controversy. Thus, the Court concludes that Innovative Therapies is distinguishable from the instant matter.

The Court finds that, as to the '738 Patent, this action falls within the scope of the SanDisk rule because AGA had, prior to commencement of the suit, asserted rights to discovery in anticipation of amending its patent infringement complaint, based on Gore's planned launch of the GSO product in Europe, which Gore claims it has the right to do without license. SanDisk, 480 F.3d at 1381. The Court therefore concludes that subject matter jurisdiction exists in this matter as to the '738 Patent, and will deny Defendant's motion to dismiss as to Counts III and IV of the Complaint.

**B.  Personal Jurisdiction**

1.  Standard of Review

Defendant also moves to dismiss the Complaint under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. As with subject matter jurisdiction, the issue of the Court's jurisdiction over the parties, on issues "intimately involved with the substance of the patent laws," falls under Federal Circuit law. Electronics For Imaging, Inc. v. Coyle, 340 F.3d

1344, 1348 (Fed. Cir. 2003) (quoting <u>Akro Corp. v. Luker</u>, 45 F.3d 1541, 1543 (Fed. Cir. 1995)).

In this case, Plaintiff has been permitted limited discovery to satisfy its burden of proving the existence of personal jurisdiction.

> [W]here the district court's disposition as to the personal jurisdictional question is based on affidavits and other written materials in the absence of an evidentiary hearing, a plaintiff need only to make a prima facie showing that defendants are subject to personal jurisdiction. In the procedural posture of a motion to dismiss, a district court must accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor.

<u>Id.</u> at 1349.

Plaintiff argues that the Court's exercise of personal jurisdiction over AGA in Delaware is permissible under theories of both general jurisdiction and personal jurisdiction. Plaintiff argues that both theories of personal jurisdiction are applicable in part because the sales of AGA's subsidiary, AMS, are attributable to AGA. Defendant disputes AGA's argument that AMS's activities and contacts with the forum can be imputed to AGA. The Court will assume, without deciding, that AMS's sales activity and contacts in Delaware are attributable to AMS because the resolution of that dispute does not change the Court's ultimate conclusion that the Court lacks personal jurisdiction over AGA.

20

2.   <u>General Jurisdiction</u>

Under a theory of general jurisdiction, the exercise of jurisdiction is proper where the defendant has continuous and systematic contacts with the forum state, even if those contacts are not related to the cause of action.   <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408 (1984).   The Court concludes that Plaintiff has failed to meet its burden of making a prima facie showing of AGA's continuous and substantial contacts with the forum state.

The amount of sales of Defendant's products in the forum is insufficient to constitute continuous and substantial as required by Supreme Court precedent.   The fact only an insignificant percentage of AGA's product sales took place in Delaware is insufficient to establish the continuous and substantial contacts required under <u>Helicopteros</u>.   Plaintiff cites to the non-controlling Third Circuit case of <u>D'Jamoos v. Pilatus Aircraft Ltd.</u>, 566 F.3d 94 (3d Cir. 2009) for the proposition that substantial sales of Defendant's products by a subsidiary in the forum can establish general jurisdiction, but the case is easily distinguishable by the fact that, there, defendant's subsidiary's in-forum sales constituted approximately half of defendant's total sales for the same time period.   By contrast, here, AMS's sales in Delaware constituted less than 0.5% of AGA's total sales for the same time period.   The Federal Circuit has found that

sales of less than 2% of defendant's total sales in the forum is insufficient to constitute general jurisdiction.  See Campbell Pet Co. v. Miale, 542 F.3d 879, 884 (Fed. Cir. 2008) ("That degree of commercial activity is far short of the amount that was present in the Helicopteros Nacionales case, yet in that case the Supreme Court held that even that degree of activity was insufficient to support the exercise of general jurisdiction over the defendant.")

Similarly, the fact that three clinical trials of Defendant's products have occurred in the forum over a fourteen year period is likewise insufficient.  Plaintiff has produced no evidence that two of those trials are, in fact, connected to Defendant AGA Medical Corp.  Even were the Court to conclude that the current FDA clinical trials were attributable to Defendant AGA, such contacts do not constitute "continuous" activities. The Court therefore finds that personal jurisdiction over Defendant AGA cannot be sustained on a general jurisdiction theory.

### 3.  Specific Jurisdiction

The Court reaches the same conclusion regarding specific jurisdiction.  Under a theory of specific jurisdiction, the Court's inquiry proceeds along two tracks: whether the forum state's long-arm statute permits service of process, and whether the assertion of jurisdiction would be inconsistent with due

process.  Genetic Implant Sys., Inc. v. Core-Vent Corp., 123 F.3d

1455 1458 (Fed. Cir. 1997) (citing Burger King Corp. v.

Rudzewicz, 471 U.S. 462, 471-76 (1985)).  In this case,

Delaware's long-arm statute permits service of process to the

limits of the due process clause of the federal Constitution.

See 10 Del. C. § 3104(c); LaNuova D&B S.p.A. v. Bowe Co., 513

A.2d 764, 768 (Del. 1986) ("section 3104(c) has been broadly

construed to confer jurisdiction to the maximum extent possible

under the due process clause").  Therefore, the specific

jurisdiction analysis in this case narrows to one inquiry:

whether jurisdiction over AGA in Delaware comports with due

process.

    The Federal Circuit has adopted a three-factor test to

determine whether an out-of-state patent defendant can be subject

to specific jurisdiction consistent with due process.

> To determine whether jurisdiction over an out-
> of-state defendant comports with due process,
> we look to whether (1) the defendant
> purposefully directed its activities at
> residents of the forum state, (2) the claim
> arises out of or relates to the defendant's
> activities with the forum state, and (3)
> assertion of personal jurisdiction is
> reasonable and fair.

Electronics For Imaging, Inc. v. Coyle, 340 F.3d 1344, 1350 (Fed.

Cir. 2003).

    As to the first prong of this analysis, the Court finds that

Plaintiff has not demonstrated that Defendant AGA has

purposefully directed any relevant activities at residents of
Delaware.  Plaintiff argues that AGA's patent enforcement
activities in the Minnesota Action constitute the requisite
purposefully directed activities because such activities were
directed at Gore, which is a Delaware resident.  Plaintiff argues
that these enforcement activities, combined with AGA's exclusive
license agreement with AMS with regard to the patents at issue,
suffice to satisfy Federal Circuit precedent.  See Silent Drive,
Inc. v. Strong Industries, Inc., 326 F.3d 1194, 1202 (Fed. Cir.
2003).  Plaintiff's argument, however, is premised on the
assumption that because W.L. Gore is a Delaware corporation,
AGA's patent enforcement activities and threats were directed at
Gore in Delaware.  But Plaintiff cites no authority supporting
such a leap.

In Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.,
148 F.3d 1355 (Fed. Cir. 1998), for example, the Federal Circuit
recognized that specific jurisdiction could be based on such a
combination of threats of patent suit and in-forum exclusive
license agreements.  Id. at 1360-61.  However, the cease and
desist letters sent to the declaratory judgment plaintiff in that
case were sent to the plaintiff in the forum state.  Id. at 1357.
In the instant matter, all contacts between AGA and Gore appear
to have taken place either in Minnesota or were sent to Arizona.
The fact that Gore happens to be incorporated in Delaware and

locates other portions of its business in Delaware is immaterial to AGA's actions, which were not directed to the forum state. "[E]nforcement activities taking place outside the forum state do not give rise to personal jurisdiction in the forum". Radio Sys. Corp. v. Accession, Inc., 638 F.3d 785, 792 (Fed. Cir. 2011).

Therefore, without any specifically directed activity at the forum state, Plaintiff cannot meet its burden of establishing a prima facie showing of specific jurisdiction in this matter.  The Court therefore concludes that personal jurisdiction does not exist in this action over Defendant AGA Medical Corp.

As an alternative to dismissal, where a court finds that it lacks personal jurisdiction it may transfer the action "to any other court in which the action could have been brought," so long as such a transfer "is in the interest of justice."  28 U.S.C. § 1631.  The Court concludes that this action could have been brought in Defendant AGA's state of residence, Minnesota. Further, the Court concludes that such a transfer is in the interest of justice, as the parties are currently engaged in litigation on the same patent that remains at issue in this action, the '738 Patent.

**C.  Venue Transfer**

Finally, the Court concludes that, even were it to conclude that personal jurisdiction exists in this matter in Delaware, the Court would still transfer the action to Delaware pursuant to

Defendant's motion in the alternative to transfer for the convenience of the parties, the witnesses and considerations of judicial efficiency pursuant to 28 U.S.C. 1404(a).  The Third Circuit has articulated several public and private interest factors for the Court to consider when deciding a motion to transfer under § 1404(a).  <u>Jumara v. State Farm Ins. Co.</u>, 55 F.3d 873, 879 (3d Cir. 1995) (cited in <u>In re Link A Media Devices Corp.</u>, 662 F.3d 1221, 1223 (Fed. Cir. 2011)).  The relevant private interests include the plaintiff's forum preference, the defendant's preference, the convenience of the parties as indicated by their relative physical and financial condition, the convenience of the witnesses, to the extent that such witnesses are unavailable for trial in one of the fora, and the location of evidence.  <u>Id.</u>  The public interests include practical considerations that could make trial less expensive or more expeditious.  <u>Id.</u>  The Court concludes that virtually all of these factors favor transfer with the single exception of the preference of the Plaintiff.

Other than the fact that Gore is incorporated in Delaware, Plaintiff offers no practical reason to keep the action in Delaware, while Defendant points to the fact that several fact witnesses, such as the inventor of the remaining patent at issue, are located in Minnesota and are outside the reach of witness subpoena in Delaware.  Further, the convenience of the parties

clearly favors Minnesota, as both parties are currently engaged in litigation in that forum, and have already engaged in discovery related to both the '738 Patent and the GSO in the Minnesota Action.  Additionally, the fact that the court in the Minnesota Action has already ordered discovery regarding the GSO also favors the public interest factor of judicial efficiency.

Plaintiff argues that transfer does not enhance efficiency because this action also involves the '552 Patent which is not at issue in the Minnesota Action, but as the Court has already determined that subject matter jurisdiction is lacking with regard to the '552 Patent, this consideration is no longer relevant.  Accordingly, the Court concludes that, even were it not transferring the action to the District of Minnesota pursuant to 28 U.S.C. § 1631, it would still transfer the action pursuant to 28 U.S.C. § 1404(a).

## IV.  CONCLUSION

For the reasons stated above, the Court has concluded that it lacks subject matter jurisdiction over Plaintiff's declaratory judgment claims regarding Defendant's '552 Patent, contained in Counts I and II, and will consequently grant Defendant's motion to dismiss those Counts.  The Court has additionally concluded that Plaintiff has not shown that personal jurisdiction exists over Defendant AGA in Delaware, and will consequently transfer

27

the action to the District of Minnesota, pursuant to 28 U.S.C. § 1631.  The accompanying Order will be entered.


**March 19, 2012**                      **s/ Jerome B. Simandle**
Date                                     JEROME B. SIMANDLE
                                         United States District Judge

28